IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LEE MARIE TORMOS-POL<br><br>Plaintiff<br><br>vs<br><br>MARIA CONTE-MILLER, personally and as Director of the forensic sciences institute (FSI); IRMA RIVERA-DIEZ, personally and as Director of the Residency Program of the FSI; DR. WALTER R. FRONTERA-ROURA, personally and as Dean of the Graduated Medical Education at the Medical Sciences Campus (MSC); the UNIVERSITY OF PUERTO RICO; ABC INSURANCE COMPANY, as insurer of the FSI; XYZ INSURANCE COMPANY, as insurer of the University of Puerto Rico<br><br>Defendants | CIVIL 10-1935CCC |

**OPINION AND ORDER**

Lee Marie Tormos-Pol has filed this Title VII[1] action alleging gender discrimination against her former employer, the Forensic Sciences Institute (FSI) and the University of Puerto Rico's (U.P.R.) Medical Sciences Campus; Dr. María Conte-Miller, Director of the FSI; Dr. Irma Rivera-Diez, Director of the Residency Program at the FSI; and Dr. Walter Frontera-Roura, Dean of the U.P.R. medical school.  The case is now before us on Motions to Dismiss filed by the U.P.R. and Dr. Frontera (**docket entries 22 and 25**), and U.P.R.'s supplemental brief (docket entry 24).  Tormos-Pol opposed the motions (docket entry 28), to which movants replied (docket entries 35 and 36).[2]

**I.     FACTUAL ALLEGATIONS**

The relevant facts, as alleged in the amended complaint (docket entry 6), are as follows:

---

[1]Other statutory sources will be discussed in the text.

[2]Movants' motions to file replies to plaintiff's opposition (**docket entries 35 and 36**) are GRANTED.

CIVIL 10-1935CCC                              2

        After completing medical school plaintiff obtained a residency in the Anatomic and
Clinical Pathology program at the U.P.R. School of Medicine.  (¶11).  Dr. Pío Rechany, FSI's
former director, offered plaintiff employment as an Auxiliary Forensic Pathologist at FSI,
beginning July 2, 2007.  (¶12).  Plaintiff wanted to pursue a sub-speciality in forensic
pathology and Dr. Pío Rechany offered to "give her the requirements of residency in
Forensic Pathology" (¶13), but the FSI program, however, had lost its accreditation.  (¶14).
When Dr. Rodríguez-Orengo succeeded Dr. Rechany as FSI Director, plaintiff told him of
her interest in obtaining the subspecialty in Forensic Pathology and of her desire to continue
assisting the Institute in regaining the program's accreditation.  (¶17).  Plaintiff, therefore,
during the last year of her residency in Anatomical and Clinical Pathology, obtained
authorization to help in the reaccreditation process of the FSI's Forensic Pathology
Residency Program (FPR).  (¶18).  The Forensic Pathology Residency Program was finally
reaccredited in December 2007.  (¶21).

        After the Residency Program of Forensic Pathology was accredited, candidates were
considered for the position of Residen[t] in Forensic Pathology. (¶22).  The plaintiff who was
interested in being a candidate periodically requested the status of her request for the
residency.   The Plaintiff was finally called to Dr. Rivera-Diez's office to receive the
application which was provided to her by Dr. Rivera-Diez.   (¶23).   Plaintiff and
Dr. Sanabria-Bellasai were the only two candidates for the Residency. Tormos-Pol claims
that Dr. Sanabria's interview lasted only 20 minutes and he was not asked how he was going
to care for his son, while her interview as a candidate for the FSI Forensic Pathology
Residency Program lasted one hour, 25 minutes and she was asked "how she was going
to take care of her daughter during her time on duty."  (¶24).

        On March 31, 2008 plaintiff received a letter from FSI indicating that she had not
been selected for its FPR because she did not have the Board Certification, but she would

CIVIL 10-1935CCC                                    3

be given the residency the following year – July 2009 – upon receiving her Board Certification.  (¶25).

Plaintiff further alleges that during the year that Dr. Sanabria was doing his FSI residency in Forensic Pathology, he maintained his position as Auxiliary Pathologist at the FSI and received an annual pay of more than $65,000.00. (¶26).  In January 2009, plaintiff notified Dr. Conte-Miller that she accepted the offer made by the Institute to start her Forensic Residency in July 2009.  (¶27).  Plaintiff Tormos-Pol obtained her Board Certification and was notified that she had been selected for the Residency Program of Forensic Pathology **with the Institute** and would start July 1st, 2009. (¶31) (our emphasis).

To her surprise, on June 16, 2009 Hernández-Dávila, Director of Human Resources, and Ramón Aponte, Finance Director, **from the Institute** met with Plaintiff and informed her that **the Institute was unable to pay her the same salary her male colleague had**, and that she would be receiving a considerabl[y] inferior amount, that is, $41,000.00 instead of the more than $65,000.00 received by her male counterpart.  (¶32) (our emphasis).

On June 24, 2009, Tormos-Pol sent a letter to Conte stating that if she was not granted the agreed pay in the same terms of the male's salary or more than $65,000.00 given to Dr. Sanabria, she would be forced to decline the position and continue as an Auxiliary Forensic Pathologist, that was her career position.  (¶34).  Dr. Conte informed plaintiff on July 7, 2009 that the $65,000.00 salary would not be paid. (¶35).  Plaintiff alleges that she was told by Conte-Miller "that if she did not accept the Residency Program she could not be part of the **Institute**."  (¶38).  Tormos-Pol then alleges that the next day her I.D. card and computer log-in were deactivated, and access to her office and to all areas of the Institute were denied by Conte-Miller" in retaliation for not having accepted the Residency Program on the terms provided by Conte-Miller.  (¶39).  Human Resources notified Plaintiff that Dr. Conte had ordered that all  her employee privileges be terminated. (¶41).  Because of all the actions taken against Plaintiff, she was forced to send a letter to

CIVIL 10-1935CCC                              4

Conte-Miller indicating that as a result of her order to terminate her employment, she would cease her duties July 21st, 2009.  (¶43).

Plaintiff had to incur in expenses amounting to at least $16,000.00 to obtain her Residency as a Forensic Pathologist in South Carolina, since no other institution in Puerto Rico would offer it.  (¶45).

## II.   PLEADING STANDARDS

Under Rules 12(b)(1) and 12(b)(6), a defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be granted."  Benítez-Navarro v. González-Aponte, 660 F. Supp. 2d 185, 188 (D.P.R. 2009).  A motion to dismiss brought under Rule 12(b)(1) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6).  Cintrón-Luna v. Román-Bultrán, 668 F. Supp. 2d 315, 316 (D.P.R. 2009).  "In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege 'a plausible entitlement to relief'."  Martínez-Díaz v. Doe, 683 F. Supp. 2d 171, 173 (D.P.R. 2010).  When ruling on a motion to dismiss the "court must accept the complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor."  Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008).  Although "Twombly does not require heightened fact pleading of specifics . . . it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible'."  Quirós v. Muñoz, 670 F. Supp. 2d 130, 131 (D.P.R. 2009).  "Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level'."  Maldonado-Concepción v. Puerto Rico, 683 F. Supp. 2d 174, 175-76 (D.P.R. 2010).

In Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified that two underlying principles must guide this Court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a

CIVIL 10-1935CCC                              5

Rule 12(b)(6) motion. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. "Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 1949. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -but it has not 'show[n]'- 'that the pleader is entitled to relief'." Id. "Furthermore, such inferences must be at least as plausible as any 'obvious alternative explanation'." Martínez-Díaz v. Doe, 683 F. Supp. 2d at 174 (quoting Ashcroft v. Iqbal, 129 S.Ct. at 1950-51).

### III.    ANALYSIS

As correctly noted by U.P.R., as an instrumentality of the Commonwealth of Puerto Rico, it is protected from suit in federal Courts by the Eleventh Amendment. Vizcarrondo v. Board of Trustees of the U.P.R., 139 F. Supp. 2d 198, 201 (D.P.R. 2001). As such, it cannot be sued in a Section 1983 action; Pinto v. Universidad de Puerto Rico, 895 F.2d 18, (1st Cir. 1990); Vicenty Martell v. Estado Libre Asociado, 48 F. Supp. 2d 81, 92 (D.P.R. 1999) or under Articles 1803 and 1803 of the Civil Code of Puerto Rico. Dogson v. University of Puerto Rico, 26 F. Supp. 2d 341, 344 (D.P.R. 1998), or claims under Law 17 and Law 69. Huertas González v. University of Puerto Rico, 250 F. Supp. 2d 304, 315 (D.P.R. 2007). With regard to plaintiff's claims under Law 100 , it is inapplicable to

CIVIL 10-1935CCC                              6

U.P.R.  Id., at 314. U.P.R. also points out  that Law 80, for unjust dismissal, cannot proceed

against it because Tormos-Pol's employment relationship was solely with the FSI.[3]

As to the main claim, that of sex discrimination under Title VII, movant identifies

plaintiff's Achilles' heel:  the fact that there is not a single factual allegation  in plaintiff's

entire amended complaint against the University of Puerto Rico, Dr. Walter Frontera, or any

of its other agents or  employees.

Dr. Frontera's dismissal motion emphasizes the fact that plaintiff' claims under

§ 1981(a) and § 1983 are time-barred inasmuch as the filing of a discrimination charge

before the Equal Employment Opportunity Commission (EEOC) cannot serve to toll the

limitations period for  such claims.  Cordero v. University of Puerto Rico, 371 F. Supp. 2d 71,

76 n.1 (D.P.R. 2005).  He also claims Eleventh Amendment immunity for claims against him

in his official capacity.  Similarly, he argues that the claims against him under Articles 1802

and 1803 and Laws 100 and 69 are also time-barred, using the same or similar arguments

and jurisprudence as the U.P.R.

Plaintiff, in her opposition to the motions (docket entry 28), argues the existence of

a set of facts entirely absent from her amended complaint.  Contentions raised on pages 4-5

that are nowhere to be found in the amended complaint included the following:

The Medical Sciences Campus had lost the Program's Accreditation[4] . . . .

The Residency Program in Forensic Pathology is a position under contract
with the Medical Science Campus.

The candidate becomes an employee of the UPR, while performing the duties
of resident under the program.

_____

[3]The lack of an employment relationship with U.P.R. is also raised as to the alleged
due process violation in her constructive discharge. That claim, however, is already barred
against U.P.R. by the Eleventh Amendment.

[4]Plaintiff loosely uses the term "Medical Sciences Campus," a physical location,
thereby confusing it with the U.P.R.'s medical school which is located there. According to the
Campus' internet site, the following U.P.R. schools are located there: School of
Medicine, School of Dentistry, School of Health Related Professions,  School of Pharmacy,
Public Health School, and School of Nursing.

CIVIL 10-1935CCC                              7

On July 9, 2009, Plaintiff sent a letter to Dr. Walter Frontera, Dean of the
Medical Sciences Campus, alleging she had been discriminated.

The acts committed by UPR and Frontera denying Plaintiff the same benefits
of her male counterpart, ended up in Plaintiff's illegal termination of
employment.

Aside from her identification of "The University of Puerto Rico," "Dr. Walter R.
Frontera-Roura, personally and as **Dean of the Graduated Medical Education** (*sic*) **at the
Medical Science Campus**," neither defendant is mentioned anywhere else in the amended
complaint. We emphasize Tormos-Pol's description, albeit incorrect, of Frontera's official
position, because she acknowledges that the Medical Science Campus is a place, not an
institution. Contrary to what she argues in the opposition, her amended complaint states:
"but given the fact that the program had lost its accreditation, Plaintiff would be able to work
only as a Forensic Patholog[ist] **in the sponsoring institute, in this case the Forensic
Science Institute**."   (¶14) (our emphasis).   "In January 2009, Plaintiff notified
Dr. Conte-Miller that she **accepted the offer made by the Institute to start her Forensic
Residency** in July 2009. (¶27). Plaintiff . . . was notified that she had been selected for the
**Residency Program of Forensic Pathology with the Institute** . . . . (¶31) (our
emphasis) . . . Plaintiff was **informed by Conte** in a meeting that the $65,000.00 would not
be paid. (¶35). Human Resources notified Plaintiff that **Dr. Conte had ordered that all her
employee privileges be terminated** (our emphasis).   Also, Frontera's name is not
mentioned in relation to the letter she sent to the Medical Sciences Campus.  (¶36).

In sum, there is nothing in the complaint to connect U.P.R. and Frontera in any way
to the terms of the Forensic Pathology Residency offered to Tormos-Pol or her termination
of employment at the FSI.  Whatever specific facts she may have alleged against them in
her charge made to the Anti-Discrimination Unit were left behind when she filed her
complaint, and her amended complaint, before this court.  "[T]he Court is under no duty to
exercise imagination and conjure what a plaintiff might have alleged, but did not, and do
counsel's work for him or her. It is enough to view  the basic complaint. In this instance the

CIVIL 10-1935CCC                          8

complaint failed to contain the allegations which plaintiff now wishes called to mind." <u>Pinto</u>, *supra*, at 19.

Accordingly, movants' Motions to Dismiss (**docket entries 22 and 25**) are GRANTED and this action is DISMISSED, with prejudice, in its entirety as to defendants University of Puerto Rico and Dr. Walter Frontera.

SO ORDERED.

At San Juan, Puerto Rico, on September 29, 2011.

S/CARMEN CONSUELO CEREZO
United States District Judge