IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LEE MARIE TORMOS-POL<br><br>Plaintiff<br><br>vs<br><br>MARIA CONTE-MILLER, personally and as Director of the Forensic Sciences Institute (FSI); IRMA RIVERA-DIEZ, personally and as Director of the Residency Program of the FSI; DR. WALTER R. FRONTERA-ROURA, personally and as Dean of the Graduated Medical Education at the Medical Sciences Campus (MSC); the UNIVERSITY OF PUERTO RICO; ABC INSURANCE COMPANY, as insurer of the FSI; XYZ INSURANCE COMPANY, as insurer of the University of Puerto Rico<br><br>Defendants | CIVIL 10-1935CCC |

**OPINION AND ORDER**

Lee Marie Tormos-Pol has filed this Title VII[1] action alleging gender discrimination against her former employer, Dr. María Conte-Miller (Conte), Director of the Forensic Sciences Institute (FSI), and Dr. Irma Rivera-Diez (Rivera), Director of the Residency Program at the FSI,[2] in representation of the FSI.[3] The case is now before us on a Motion to Dismiss filed by Conte and Rivera (**docket entry 40**). Tormos-Pol opposed the motion (docket entry 44).

**I. FACTUAL ALLEGATIONS**

The relevant facts, as alleged in the amended complaint (docket entry 6), are as follows:

---

[1] Other statutory sources will be discussed in the text.

[2] Other defendants, University of Puerto Rico and its School of Medicine director, Dr. Walter Frontera, have been dismissed.

[3] Although FSI was not named as a defendant in this action, a Title VII claim against supervisory employee in his official capacity as an agent of the employer operates as a claim against the employer. See Ríos-Colón v. Toledo-Dávila, 641 F.3d 1, 4 (1st Cir. 2011).

CIVIL 10-1935CCC                                            2

After completing medical school plaintiff obtained a residency in Anatomic and Clinical Pathology at the U.P.R. School of Medicine. (¶11). Dr. Pío Rechany, FSI's former director, offered plaintiff employment as an Auxiliary Forensic Pathologist at FSI, beginning July 2, 2007. (¶12). Plaintiff wanted to pursue a sub-speciality in forensic pathology (¶13), but the FSI program had lost its accreditation. (¶14). Plaintiff, therefore, during the last year of her residency in Anatomical and Clinical Pathology, obtained authorization to help in the reaccreditation process of the FSI's Forensic Pathology Residency Program (FPR), (¶18) which was finally reaccredited in December 2007. (¶21).

After the FPR was accredited, candidates were considered for the position of Resident in Forensic Pathology. (¶22). The plaintiff, who was interested in being a candidate, periodically inquired about the status of her request for the residency. She was finally called to Dr. Rivera-Diez's office to receive the application form, which was provided to her by Dr. Rivera-Diez. (¶23). Plaintiff and Dr. Sanabria-Bellasai, a male, were the only two candidates for the residency. Tormos-Pol claims that Dr. Sanabria's interview lasted only 20 minutes and he was not asked how he was going to care for his son, while her interview as a candidate for the FPR lasted 1 hour, 25 minutes, and she was asked "how she was going to take care of her daughter during her time on duty." (¶24).

On March 31, 2008 plaintiff received a letter from FSI indicating that she had not been selected for its FPR because she did not, as yet, have the Board Certification in her specialty, but she would be given the residency the following year – July 2009 – upon receiving her Board Certification. (¶25).

Plaintiff further alleges that during the year that Dr. Sanabria was doing his residency in Forensic Pathology, he maintained his position as Auxiliary Pathologist at the FSI and received a salary of more than $65,000.00. (¶26). In January 2009, plaintiff notified Conte that she accepted the offer made by the Institute to start her Forensic Pathology Residency in July 2009. (¶27). Tormos-Pol obtained her Board Certification and was notified that she

CIVIL 10-1935CCC                                     3

had been selected for the FSI's Forensic Pathology Residency, starting July 1st, 2009. (¶31) (our emphasis).

On June 16, 2009 Hernández-Dávila, Director of Human Resources, and Ramón Aponte, Finance Director, from the Institute met with Plaintiff and informed her that the FSI was unable to pay her the same $65,000.00 salary her male colleague had been paid, and that she would be receiving a considerably lower amount, that is, $41,000.00. (¶32).

Tormos-Pol further avers that on June 24, 2009, she sent a letter to Conte stating that if she was not paid the agreed-upon amount, the same as the $65,000.00 given to Dr. Sanabria, she would be forced to decline the position and to continue as an Auxiliary Forensic Pathologist, her career position. (¶34). Conte informed plaintiff on July 7, 2009 that the $65,000.00 salary would not be paid. (¶35). Plaintiff alleges that Conte told her "that if she did not accept the Residency Program she could not be part of the **Institute**." (¶38). Tormos-Pol contends that the next day her I.D. card and computer log-in were deactivated, and access to her office and to all areas of the Institute were denied by Conte in retaliation for not having accepted the Forensic Pathology Residency on the terms provided by Conte. (¶39). She further avers that Human Resources notified her that Conte had ordered that all her employee privileges be terminated. (¶41). Because of all the actions allegedly taken against her, Tormos-Pol claims that she was forced to send a letter to Conte indicating that, as a result of her order to terminate plaintiff's employment, she would cease her duties July 21st, 2009. (¶41). Tormos-Pol also alleges that defendants continued reprisals against Plaintiff by delaying the return of her retirement benefits for almost a year. (¶44).

**II.   PLEADING STANDARDS**

Under Rules 12(b)(1) and 12(b)(6), a defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be granted." <u>Benítez-Navarro v. González-Aponte</u>, 660 F. Supp. 2d 185,

CIVIL 10-1935CCC                             4

188 (D.P.R. 2009). A motion to dismiss brought under Rule 12(b)(1) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). Cintrón-Luna v. Román-Bultrán, 668 F. Supp. 2d 315, 316 (D.P.R. 2009). "In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege 'a plausible entitlement to relief'." Martínez-Díaz v. Doe, 683 F. Supp. 2d 171, 173 (D.P.R. 2010). When ruling on a motion to dismiss the "court must accept the complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor." Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008). Although "Twombly does not require heightened fact pleading of specifics . . . it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible'." Quirós v. Muñoz, 670 F. Supp. 2d 130, 131 (D.P.R. 2009). "Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level'." Maldonado-Concepción v. Puerto Rico, 683 F. Supp. 2d 174, 175-76 (D.P.R. 2010).

In Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified that two underlying principles must guide this Court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. "Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 1949. "Determining whether a complaint states a plausible claim for relief will . . . be

CIVIL 10-1935CCC                                                5

a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -but it has not 'show[n]'- 'that the pleader is entitled to relief'." Id. "Furthermore, such inferences must be at least as plausible as any 'obvious alternative explanation'." Martínez-Díaz v. Doe, 683 F. Supp. 2d at 174 (quoting Ashcroft v. Iqbal, 129 S.Ct. at 1950-51).

### III.  ANALYSIS

Defenses raised by movants include the statute of limitations as to plaintiff's civil rights claims brought pursuant to 42 U.S.C.§§1981 and 1983, based on the fact that the last action alleged, Tormos-Pol's constructive discharge from her career position, occurred on July 21, 2009 and this lawsuit was not filed until September 27, 2010, or more than one year after the last event. Movants also raise Eleventh Amendment immunity as to FSI and their own immunity from liability for money damages in their official capacities. As to the claim under the Equal Pay act, at page 14 of their motion, Conte and Rivera contend that the Forensic Pathology Residency Program is, in reality, a full time, one-year Graduate Medical Education Program where no wages are paid for academic work, and no employer-employee relation exists with FSI. "What is given to the fellow by the academic institution is a stipend to assist the student during the year of Residency in Forensic Pathology." Movants further note that, with regard to Tormos-Pol's Title VII claim, there is no invidivual liability under Title VII. See Fantini v. Salem State Coll., 557 F.3d 22, 30-31 (1st Cir. 2009).

In her opposition, plaintiff attempts to tacitly amend her complaint by introducing facts that are not plead in her complaint. She now claims that she was denied the request for a fellowship program up until May 13, 2010. She brings as an exhibit a copy of the charge that she filed with the Puerto Rico Anti Discrimination Unit (ADU) to demonstrate details that were omitted from her amended complaint. She further contends that she continued suffering discriminatory retaliation as late as February 2011, when she finally received

monies owed to her (opposition at 8) and, therefore, "[her] causes of action for reprisal and discrimination under 1983 and Title VII are not time-barred."

The Court may not read into Tormos-Pol's amended complaint what purports to be an effort to correct through argument in her opposition, what appears in hindsight, to be deficiencies in her amended complaint.[4]   "[T]he Court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her. It is enough to view the basic complaint. In this instance the complaint failed to contain the allegations which plaintiff now wishes called to mind." Pinto v. Universidad de Puerto Rico, 895 F.2d 18,19 (1st Cir.1985).

Plaintiff''s poorly organized amended complaint fails to delineate which claims are brought under which laws and against which defendant(s), as required by Iqbal and Twombly, *supra*.  The claims are set forth in the vaguest form possible, i.e., "46. The acts undertaken by the **Defendants** constitute a violation of Tormos-Pol's rights under the **laws of the United States** and the **laws of the Commonwealth of Puerto Rico**.  Particularly, **they** incurred in the following violations." (¶46) (our emphasis).  This is followed by twelve statements of alleged violations, only one of which is connected to a specific statute or constitutional provision.[5]

Paragraphs 47 through 49 charge that "the actions of the Defendants" violate Title VII, the Equal Pay Act, Section 1983, and various Puerto Rico laws, leaving it to the Court, for the most part, to sort out the lot.  We therefore address movants' motion to dismiss on the basis of the facts alleged in the amended complaint, applicable law and jurisprudence.

---

[4]We note that plaintiff's tendered second amended complaint (docket entry 27-2), the filing of which was denied, did not correct any of the deficiencies of the amended complaint.

[5]Paragraph 46i is a claim under Puerto Rico Law 80 for unjust employment termination.

CIVIL 10-1935CCC                              7

**A.    Section 1983**

Plaintiff's only claim set forth under Section 1983 is a claim for violation of her Fourteenth Amendment procedural due process rights under the United States Constitution for the alleged constructive discharge from her career employment with the FSI as an Auxiliary Pathologist, without notice and a hearing, and a generic claim of violation of the Equal Protection Clause by "subjecting her to an inferior treatment compar[ed to] that of a male." (¶48).

As stated above, the last act which plaintiff identifies with a date in her amended complaint, was her constructive discharge on July 21, 2009, more than a year before this complaint was filed. It is undisputed that the statute of limitations for acts brought under Section 1983 is the one-year limitations period set by Puerto Rico tort law. See 31 L.P.R.A. § 5298(2); Iravedra v. Public Building Authority, 283 F. Supp. 2d 570, 577 (D.P.R. 2003); see also Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, 2011 WL 4488380 *3 (1st Cir. 2011) (§1983 claims in Puerto Rico carry a one-year statute of limitations); Morán-Vega v. Cruz-Burgos, 537 F.3d 14, 20 (1st Cir. 2008). Moreover, the filing of an administrative charge with the Equal Employment Opportunity Commission or the ADU does not serve to toll the limitations period for §1983 civil rights claims. See Cordero v. University of Puerto Rico, 371 F. Supp. 2d 71, 76 n.1 (D.P.R. 2005).

In an attempt to save the time barred-claim, Tormos-Pol argues in her opposition, at pp. 4-5, that funds owing to her were not returned until "around February 2011." Plaintiff, however, characterizes the payment delay as a retaliatory act when she states that, "not only was [she] a victim of discrimination, **but also retaliation which she continued suffering as late as February, 2011** . . . ." Id., at 8 (our emphasis). Plaintiff's allegations demonstrate that if the delay in processing her payment was an act of retaliation, along with the constructive discharge, for not accepting the offered Forensic Pathology Residency for

CIVIL 10-1935CCC                                      8

$41,000.00; it is neither a Fourteenth Amendment due process nor equal protection violation.

Therefore, plaintiff's claims for violation of her due process rights and equal protection under the Fourteenth Amendment pursuant to §1983 of the Civil Rights Act are DISMISSED, as time-barred.

**B.   Title VII**

As we noted above, the Court of Appeals has consistently held that no personal liability exists under Title VII and individual defendants such as movants cannot be held liable. See e.g. Fantini, *supra*; this Court has consistently followed this precept.  Zayas v. Frank Torres-Oquendo, 2009 WL 1473506 (D.P.R. 2009); Rodríguez v. Andiamos de Puerto Rico, Inc., 2009 WL 1361957 (D.P.R. 2009); Velázquez-Torruella v. Department of Education of Puerto Rico, 2009 WL 972998 (D.P.R. 2009); Rivera Maldonado v. Hospital Alejandro Otero-López, 2009 WL 1110459 (D.P.R. 2009).  Therefore, the sex discrimination and retaliatory discharge and payment delay claims against Conte and Rivera in their personal capacities are DISMISSED, and they remain only in their official capacities insofar as they are agents representing the FSI.

**C.   The Equal Pay Act**

The Equal Pay Act (the Act), 29 U.S.C. §206(d)(1), prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs that performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."   29 U.S.C. §206(d)(1); Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995). An Equal Pay Act plaintiff must make a *prima facie* showing that the employer paid different wages to an employee of the opposite sex for substantially equal work.  Id.  Plaintiff has made no analysis to demonstrate that she is protected by the Act even though she rejected the residency that would have placed her in the position of receiving an unequal stipend.  That is, the copy of the contract she submits as Exhibit II to

CIVIL 10-1935CCC                                        9

her opposition (docket entry 44; see English translation at docket entry 61) is not an employment contract.  Rather, it is a Contract for Post-Graduate Physician in Training (Internship/Medical Residency).  The last page –the Certification of the Comptroller– identifies the type of contract as one for "Training or Guidance Service."  In order to establish a *prima facie* case of sex discrimination based on salary disparity under the federal Equal Pay Act, a plaintiff must show that her **employer** was subject to the Act, and that she was paid less than her male counterparts who were performing the work requiring substantially equal skill, effort and responsibility under similar working conditions.  McMillan v. Massachusetts Soc. for Prevent of Cruelty to Animals, 140 F.3d 288, 298 (1st Cir. 1998).

Tormos-Pol fails to make out a *prima facie* case under the Equal Pay Act.  First, there is the question of whether a discriminatory stipend for a medical residency, not a traditional employment relationship, would be subject to the Equal Pay Act.  This is an issue not addressed at any point by plaintiff.  We have found no case law on this point.  Second, having rejected the Forensic Pathology residency, she is not even a Resident who is being paid less than her male counterpart who performed work requiring substantially equal skill, effort and responsibility under similar working conditions.  Therefore, plaintiff has failed to state a claim under the Equal Pay Act.

We now turn to plaintiff's supplemental claims.

### 1. Article 1802 of the Civil Code of Puerto Rico

As a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802 of the Civil Code."  Santini Rivera v. Serv. Air. Inc., 137 D.P.R. 1, 16 (1994) (official translation). Tormos Pol has not identified any actions by defendants that fall outside of the scope of the specific laws that she already cites.  Therefore, the generic invocation of Article 1802 cannot survive.

CIVIL 10-1935CCC						10

### 2.  Law 100

Citing <u>Montalvo-Padilla v. University of Puerto Rico</u>, 492 F. Supp. 2d 36 (D.P.R. 2007), movants raise the fact that Act 100 does not apply to governmental agencies or instrumentalities unless they are operating as private businesses or enterprises. Tormos-Pol does not address this point, instead relying on <u>Rosario Toledo v. Distribuidora Kikuet, Inc.</u>, 151 D.P.R. 324 (2000), which was brought against a private corporation, to demonstrate that movants are liable in their personal and official capacities. Plaintiff having failed to show that the FSI operates as a private business, her claim under Law 100 is DISMISSED.

### 3.  Law 69

Law 69 is merely an amplification of the principles contained in Law 100 for combating gender discrimination in employment. <u>Valentín-Almeyda v. Municipality of Aguadilla</u>, 447 F.3d 85, 102 $^n$.20 (1st Cir. 2006). Under Law 69, however, the definition of employer does not exclude either governmental agencies or individual persons. Article 2 of the law, 29 L.P.R.A. §1322 defines "employer" as including "any natural or juridical person that employers laborers, workers or employees, and the chief, agent, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer or representative of said natural or [juridical] person." The same section includes in its definition of "person," governments, governmental agencies, and political subdivisions. Therefore, unlike Law 100, Law 69 is applicable to plaintiffs in their personal capacities. Plaintiffs having failed to demonstrate that the Commonwealth government has waived its Eleventh Amendment sovereign immunity as to Law 69, however, the claims against movants in their official capacities under this statute are dismissed.

### 4.  Law 115

Law 115, 29 L.P.R.A.§194a(a) provides:

> No employer may discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensations, location, benefits or privileges of the employment should the employee offer or attempt to offer, verbally or in writing, any testimony, expression or information before

CIVIL 10-1935CCC                                      11

>     a legislative, administrative, or judicial forum in Puerto Rico, when such
>     expressions are not of a defamatory character nor constitute disclosure of
>     privileged information established by law.

Law 115's protection against retaliation encompasses the appearance of all workers before any forum, including both administrative and judicial forums, in Puerto Rico. See Meléndez v. Kmart Corp., 2006 WL 696082 (D.P.R. 2006). Contrary to movants' assertion, this law is not a whistleblower statute; rather, it is an anti-retaliation statute, Reyes Guadelupe v. Casas Criollas, 597 F. Supp. 2d 255, 261 (D.P.R. 2008), and includes personal liability of supervisors who retaliate against an employee. Id. See also Hernández v. Raytheon Serv. Co. P.R., 2006 WL 1737167 *3 (D.P.R. 2006).

However, in the case before us, plaintiff did not file her administrative charge until August 7, 2009, or 17 days **after** her constructive discharge on July 21, 2009. Therefore, Tormos-Pol's constructive discharge was not retaliation for her having filed her administrative charge. Moreover, at ¶37 and 38 of her amended complaint, Tormos-Pol avers that after she wrote to Conte rejecting the Forensic Pathology Residency but would continue in her regular position, Conte told her that "if she did not accept the Residency Program she could not be part of the Institute . . . ."

Nonetheless, citing Santiago Rivera v. Autoridad de Acueductos y Alcantarillados, 178 D.P.R. 701 (2009), Tormos-Pol contends that she did not have to file an administrative or judicial claim to invoke the protection of Law 115 because on July 8, 2009 she had complained to the Medical Sciences Campus. Plaintiff's perception of Santiago Rivera is inaccurate; the procedural facts of that case are distinguishable from those before us. Santiago Rivera's claim was made to the employer's Complaint Committee. Id., at 352. At page 366 in Santiago Rivera, the Supreme Court of Puerto Rico noted that in an earlier case it had even found that going to the State Insurance Fund was a protected activity under Law 115, even though this could not be considered as testimony in the course of an administrative investigation, resulting in a substantial broadening of protection for the worker.

CIVIL 10-1935CCC 12

Plaintiff, however, has not analyzed how the letter she sent to the Medical Sciences Campus, with which she did not have any employee/employer relationship, could further stretch the interpretation of an "administrative procedure" to bring it under the umbrella of Law 115. Therefore, Tormos-Pol's Law 115 claim also fails.

### 5. *Law 80*

Movants contends that we should dismiss the Law 80 claim because Tormos-Pol did not discuss it in her amended complaint. They are incorrect. At ¶46i, at page 11, plaintiff identifies as a violation defendants' "[n]ot paying her allowance in accordance to Act No. 80 of May 30, 1976, as amended, due to her unjustified termination." However, Law 80 does not contain a waiver of sovereign immunity, Silva v. Universidad de Puerto Rico, 817 F. Supp. 1000 (D.P.R. 1993), and individual supervisors cannot be held liable under Law 80. See Mandavilli v. Maldonado, 38 F. Supp. 2d 180, 205 (D.P.R. 1994), citing Flamand v. American Int'l. Group Inc., 876 F. Supp. 356, 364 (D.P.R. 1994). Therefore, plaintiff may not seek redress under Law 80 before this Court, because of the government agencies' sovereign immunity.

### 6. *Qualified Immunity*

Conte and Rivera wrap up their motion with a claim of qualified immunity. Following a two-page treatise on the doctrine, they conclude that plaintiff's amended complaint fails to establish a violation of law by defendants, and then proceeds to slide down a non-sequitur, unnecessarily pronouncing at page 25 of their motion that, "[b]ecause qualified immunity is available when the facts pled fail to state a plausible constitutional claim and . . . plaintiff has failed to plead a plausible constitutional claim as to co-defendants Conte-Miller and Rivera-Diez [they] are therefore entitled to qualified immunity."

The Court, however, has found viable claims against movants: in their official capacities under Title VII, and in their personal capacities under Puerto Rico Law 69. Tormos Pol has plead factual allegations regarding the significantly lower stipend offered

CIVIL 10-1935CCC 13

to her for the Forensic Pathology Residency than was paid to her male counterpart the year before, as well as accommodations denied her such as time off to study for the Board examinations, besides the alleged retaliatory constructive discharge. Conte and Rivera Diez having failed to discuss why they would be entitled to qualified immunity if any causes of action survived, their request for qualified immunity is DENIED.

Accordingly, for the above-stated reasons, movants' Motion to Dismiss (**docket entry 40**) is GRANTED in part and DENIED in part. The Motion is GRANTED as to the Constitutional claims filed pursuant to Section 1983 of the Civil Rights Act; Title VII against movants in their personal capacities; the Equal Pay Act, and Puerto Rico Laws 100 and 115 and Article 1802 of the Civil Code of Puerto Rico in their entirety; and Law 80 against movants in their personal capacities, which are DISMISSED with prejudice. The motion is also GRANTED as to the claims filed pursuant to Puerto Rico Laws 69 and 80 against movants in their official capacities, which are DISMISSED without prejudice. The motion is DENIED as to the claims against movants in their official capacities filed pursuant to Title VII, and in their personal capacities pursuant to Puerto Rico Law 69.

SO ORDERED.

At San Juan, Puerto Rico, on November 30, 2011.

S/CARMEN CONSUELO CEREZO
United States District Judge